UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CINDY LOU SCHROCK,

         Plaintiff,

 v.                No. 12-CV-1898
                     (MAD/CFH)
CAROLYN W. COLVIN,

         Defendant.

---

**APPEARANCES:**         **OF COUNSEL:**

FOSTER LAW OFFICE       JONATHAN P. FOSTER, ESQ.
Attorney for Plaintiff
2268 Elmira Street
Post Office Box 400
Sayre, Pennsylvania 18840

HON. RICHARD S. HARTUNIAN    DENNIS J. CANNING, ESQ.
United States Attorney for the     Special Assistant United States Attorney
 Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION and ORDER[1]

 Plaintiff Cindy Lou Schrock ("Schrock") brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for benefits under the Social Security Act. Compl. (Dkt. No. 1). Schrock moves for a finding of disability and the

---

 [1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

Commissioner cross-moves for a judgment on the pleadings. Dkt. Nos. 15, 16. For the following reasons, it is recommended that the Commissioner's decision be affirmed.

**I. Background**

**A. Facts**

Born July 28, 1958, Schrock was fifty-years-old when she applied for disability benefits. Tr. at 15, 32, 59.[2] Schrock graduated from high school. Tr. at 15, 32. Schrock was previously employed as a bartender and a graphic artist. Id. Schrock alleges disability from multiple impairments including chronic bilateral conjunctivitis,[3] high blood pressure, and osteoarthritis of the lumbar spine. Tr. at 12, 14, 32–33, 52–53.

**B. Procedural History**

On March 12, 2010, Schrock filed an application for disability insurance benefits and social security income ("SSI") pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. claiming an alleged onset date of September 15, 2008. Tr. at 10, 12, 121. That application was denied on June 21, 2010. Tr. at 10, 61–66. Schrock requested a hearing before an administrative law judge ("ALJ"), Marie Greener, which was held on

---

[2] "Tr." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 9.

[3] The "conjunctiva" is "the delicate membrane that lines the eyelids." DORLAND'S ILLUSTRATED MED. DICTIONARY 369 (28th ed. 1994) [hereinafter "DORLAND'S"]. "Conjunctivitis" refers to the "inflammation of the conjunctiva, generally consisting of hyperemia associated with a discharge." Id.

2

May 11, 2011. Tr. at 10–16, 24–51 (transcript of the administrative hearing). In a decision dated July 19, 2011, the ALJ found that Schrock was not entitled to disability benefits. Tr. at 10–16. Schrock's counsel filed a timely request for review with the Appeals Council and on October 26, 2012, the request was denied, thus making the ALJ's findings the final decision of the Commissioner. Tr. at 1–6. This action followed.

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). If the Commissioner's finding is supported

3

by substantial evidence, it is conclusive. 42 U.S.C. § 405(g) (2006); <u>Halloran</u>, 362 F.3d at 31.

## B. Determination of Disability[4]

"Every individual who is under a disability shall be entitled to a disability . . . benefit. . . ." 42 U.S.C. § 423(a)(1) (2004). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." <u>Id.</u> § 423(d)(1)(A). A medically determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. <u>Id.</u> § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." <u>Id.</u> § 423(d)(3). Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." <u>Ventura v. Barnhart</u>, No. 04-CV-9018(NRB), 2006 WL 399458, at *3

---

[4] While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)(SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance ("SSDI")), are identical, so that "decisions under these sections are cited interchangeably." <u>Donato v. Sec'y of Health and Human Servs.</u>, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

4

(S.D.N.Y. Feb. 21, 2006)[5] (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based upon 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467. The plaintiff bears the initial burden of proof to establish each of the first four steps. DeChirico v. Callahan, 134 F.3d 1177, 1179–80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

---

[5] All Social Security Rulings and unpublished opinions cited to by the Court in this Report-Recommendation are, unless otherwise noted, attached to this Recommendation.

5

### C. ALJ Greener's Findings

Schrock, represented by counsel, testified at a hearing held on May 11, 2011. Tr. 24–51. Using the five-step disability sequential evaluation, the ALJ found that Schrock: (1) had not engaged in substantial gainful activity since September 15, 2008, the alleged onset date; (2) had the following severe medically determinable impairments: osteoarthritis of the lumbar spine and chronic conjunctivitis bilaterally; (3) did not have an impairment, alone or in combination, sufficient to meet the listed impairments in Appendix 1, Subpart P of Social Security Regulation Part 404; (4) maintains

> the residual functional capacity [("RFC")] to perform light work as defined in 20 CFR 404.1569(b) and 416.967(b): lifting and carrying twenty pounds occasionally and ten pounds frequently; standing, walking and sitting six hours out of an eight-hour workday. However, [Schrock] is to avoid work that requires depth perception or performing tasks that requires primarily using a computer [;]

(5) could not perform past relevant work; and (6) given her age, education, work experience, and RFC, was capable of engaging in employment which exists in significant numbers in the national economy. Tr. at 12–16. Therefore, a determination of not disabled was made. Tr. at 16.

### D. Schrock's contentions

Schrock first contends that the ALJ failed to properly apply the treating physician rule when evaluating the medical evidence. Schrock next contends that the ALJ was biased and failed to adequately develop the record. Finally, Schrock contends that the

6

ALJ erred in relying on the grid rules.

### 1. Treating Physician's Rule

Schrock contends that the ALJ erred when she dismissed the opinions of ophthalmologists Drs. McDonald and Plotnik, Schrock's treating physicians. When evaluating a claim seeking disability benefits, factors to be considered include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir. 1991). Generally, more weight is given to a treating source. Under the regulations, a treating source's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2005); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "This rule applies equally to retrospective opinions given by treating physicians." Campbell v. Astrue, 596 F. Supp. 2d 446, 452 (D. Conn. 2009) (citation omitted). Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(I) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503. If other evidence in the record conflicts with the opinion of the treating physician, this

7

opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given. Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted). Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. Id. at 133–34; see 20 C.F.R. § 404.1527(e) (2005).

Schrock contends that the ALJ improperly afforded Dr. Plotnik's opinions "little weight." Dr. Plotnik completed a visual impairment questionnaire on June 23, 2011 that noted a treating period between December 7, 2010 and June 22, 2011 where he saw Schrock on a monthly basis. Tr. at 411. Dr. Plotnik noted Schrock's symptoms for the right eye included "pain, photophobia, fatigue, tearing, poor depth perception," and for the left eye, "moderate decreased vision." Tr. at 414. Dr. Plotnik stated that Schrock had keratitis, stem cell deficiency, and blepharitis in the right eye and blepharitis in the left eye.[6] Tr. at 411. Based on Schrock's ability to count fingers using the Snellen test,[7] severe constriction in the field of vision, normal muscle functions, poor visual efficiency, and photophobia and pain, all of which amounting to a "disabling active eye condition,"

---

[6] "Keratitis" refers to the "inflammation of the cornea." DORLAND'S at 877. "Blepharitis" is "inflammation of the eyelids." Id. at 206.

[7]
>The Snellen test for visual acuity was developed in 1862 by Dutch ophthalmologist Herman Snellen and is comprised of the familiar letter chart. The first figure in the Snellen score refers to distance between the viewer and the visual target, typically 20 feet. The second corresponds to the distance at which a person with normal acuity could distinguish letters of the size that the viewer can distinguish at 20 feet.

Hoehn v. Int'l Sec. Servs. & Investigations, Inc., 120 F. Supp. 2d 257, 260 (W.D.N.Y. 2000) (citing inter alia STEDMAN'S MEDICAL DICTIONARY 1650, 1813 (27th ed. 2000)).

the prognosis for Schrock's right eye was "poor[, having] chronic conditions [and requiring] intensive treatment." Tr. at 411–13. As for the left eye, the prognosis was "good" based on a 20/50 central visual acuity, normal field of vision and muscle functions, and moderate visual efficiency. Tr. at 412–13.

Dr. Plotnik opined that Schrock's pain and symptoms were sufficiently severe to constantly interfere with Schrock's attention and concentration, limit her ability to work at a regular job on a sustained basis, and her ongoing impairments would last at least twelve months. Tr. at 415–16. Schrock was treated with medication and therapeutic bandages. Tr. at 414–15. Dr. Plotnik further noted that Schrock required glasses, could travel by bus, and was not a malinger. Tr. at 411, 415.

Schrock contends that Dr. Plotnik's opinions are uncontradicted. Initially, to the extent that this argument references Dr. Plotnik's diagnoses of chronic conjunctivitis that causes visual impairment, this is correct. The ALJ recognized such in finding this impairment to be severe in her analysis. Tr. at 12. The record clearly contains medical evidence consisting of clinical and laboratory diagnostic techniques indicating the presence of visual problems. See, e.g., Tr. at 217–64, 349–407. The ALJ in this case simply disagreed with Dr. Plotnik's ultimate opinion regarding Schrock's ability to work. Tr. at 14. Such is within the ALJ's province. SSR 96-5P, 1996 WL 374183, at *1 (S.S.A. 1996) (explaining that determinations of disability are reserved for the Commissioner and to the extent a treating source comments on that issue, such commentary is "never entitled to controlling weight or special significance."); see also Taylor v. Barnhart, 83 F. App'x 347, 349 (2d Cir. 2003) (explaining that a treating physician's opinion about disability "is not entitled to any weight, since the ultimate

9

issue of disability is reserved for the Commissioner.") (citing 20 C.F.R. § 404.1527(d)(1) & Snell, 177 F.3d at 133). The ALJ found Dr. Plotnik's opinions unpersuasive because "the objective medical evidence does not support Dr. Plotnik's conclusion." Tr. at 14.

The record contains opinions by Dr. McDonald from 2004 through 2011. Tr. at 197, 217–64, 349–410. Schrock experiences difficulties mainly with her right eye. Id. In 2004, Schrock had acne rosacea,[8] which led to chronic blepharitis and conjunctivitis. See, e.g., Tr. at 251, 253. Antibiotic treatments were ineffective. Tr. at 197, 217–65, 349–410. By letter dated May 6, 2009, Dr. McDonald stated,

> I am at a loss to explain the etiology of Ms. Schrock's bilateral chronic conjunctivitis. In view of the presence of follicles and failure to respond to numerous antibiotics, I feel an allergic etiology must be entertained. However, given that the patient's symptoms began in February of this year, an environmental allergen is unlikely.

Tr. at 197.

In June 2010 and April 2011, Dr. McDonald opined that due to her vision, Schrock cannot work on a computer or engage in activities involving depth perception such as driving and operating machinery. Tr. at 303–07. Dr. McDonald further indicated that it was unknown whether Schrock's condition would last, or is expected to last, at least twelve months. Tr. at 304. The ALJ accorded great weight to Dr. McDonald's opinions because they were supported by contemporaneous clinical and laboratory findings. Tr. at 14.

Furthermore, during an ophthalmology consultation with Dr. Weisenthal, M.D. on

---

[8] "Acne rosacea" is "a chronic hyperemic disease of the skin, usually involving the middle third of the face . . . ." DORLAND'S at 1472.

10

referral by Dr. McDonald, Dr. Weisenthal noted that Schrock never had eye problems when she was in Florida. Tr. at 265. Dr. Weisenthal diagnosed Schrock with blepharoconjunctivitis associated with keratitis secondary to acne rosacea and opined that the eye problems were "more of an inflammatory process." Id. Dr. Weisenthal recommended modifications to Schrock's medications. Id. Further, while recognizing the difficulty in treating the condition, Dr. Weisenthal opined that compliant use of the medications should result in a significant decrease in the inflammation. Tr. at 266. Dr. Weisenthal was not certain why Schrock had decreased vision in the right eye as he and Dr. McDonald noted that eyeball was healthy. Id.

While the record does show that Schrock received treatment for her rosacea and chronic conjunctivitis, it also shows that she lived alone, and aside from driving, was able to attend to her activities of daily living such as cooking, cleaning, doing laundry, shopping, seeing large objects, and reading with a magnifying glass, with some assistance. Tr. at 34, 41, 43–47, 153. Schrock testified that she is able to see large objects. Tr. at 38. She further testified that she had been taking antibiotics, which alleviated her symptoms to some extent. Tr. at 39. This is consistent with the findings made by Drs. McDonald and Weisenthal. The ALJ "is entitled to rely not only on what the record says, but also on what it does not say." Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (citations omitted). The record fails to support the broad and sweeping restrictions as Dr. Plotnik has proffered. Furthermore, a reasonable mind could accept the above evidence as adequate to support the ALJ's conclusion with respect to according little weight to Dr. Plotnik's opinions. Halloran, 362 F.3d at 31.

Schrock also contends that the ALJ erred in concluding that the objective medical

11

evidence did not support a finding of disabling symptoms when "great weight" was accorded to Dr. McDonald's opinions, which purportedly support such a finding. Pl.'s Mem. of Law at 12; Tr. at 15. Dr. McDonald does not expressly proffer an opinion that Schrock is disabled. In any event, determinations of disability are reserved for the Commissioner. SSR 96-5P, 1996 WL 374183, at *1. Rather, as discussed supra, Dr. McDonald simply opined that Schrock had visual functional limitations and must avoid activities involving depth perception. Furthermore, as mentioned supra, Dr. McDonald's opinions were supported by substantial evidence consisting of his contemporaneous clinical findings as well as those of Dr. Weisenthal.

For the reasons stated above, the ALJ's decision to accord the opinions of Dr. Plotnik less weight was supported by substantial evidence as Dr. Plotnik's conclusions were inconsistent with the medical record. Additionally, the ALJ's decision that the objective medical evidence did not support a finding of disabling symptoms was supported by substantial evidence. Accordingly, the Commissioner's decision on these issues should be affirmed.

### 2. ALJ Misconduct

Schrock generally contends that the ALJ erred by failing to take "genuine efforts to explore issues relating to . . . [her] vision impairments. . . . [and making] absolutely no effort to develop the record on [her] behalf . . . ." Pl.'s Mem. of Law at 17–18. Moreover, Schrock contends that the ALJ failed to act as an impartial adjudicator because she failed to develop the record. Id. at 16.

### i. Developing the Record

An ALJ has an affirmative duty to develop the administrative record during Social Security hearings, even when the claimant is, as in this case, represented by counsel. See Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) (citations omitted); see also 20 C.F.R. § 404.1512(d) (describing Commissioner's duty to develop a "complete medical history for at least the [twelve] months preceding the month in which [claimant] file[s an] application . . . ."); 20 C.F.R. § 404.1512(e) (explaining how the Commissioner will attempt to retrieve the entire medical history from claimant's treating sources as opposed to always seeking consultative examinations). Accordingly, "[t]he ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citation omitted); see also Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.") (citation omitted); Roat v. Barnhart, 717 F. Supp. 2d 241, 264 (N.D.N.Y. 2010) (holding that where a "medical record paints an incomplete picture of [claimant's] overall health during the relevant period, as it includes evidence of the problems, the ALJ had an affirmative duty to supplement the medical record, to the extent it was incomplete, before rejecting [claimant's] petition.") (internal quotation marks, altercations, and citation omitted).

This duty exists, in varying degrees, depending upon whether or not the claimant is represented and in what capacity. See Smith v. Bowen, 687 F. Supp. 902, 906

13

(S.D.N.Y. 1988) ("The ALJ's duty to develop the comprehensive record . . . is greatest when claimant is unrepresented; but the duty still exists when plaintiff is represented and even more . . . where plaintiff if represented . . . by a paralegal."); see also Cruz v. Sullivan, 912 F.2d 8, 11, (2d Cir. 1990) ("[W]hen the claimant is unrepresented, the ALJ is under a heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all of the relevant facts.") (internal quotation marks and citations omitted). Specifically, when discussed in the context of a treating physician, the inquiry has revolved around the quality of the records which have been provided to the ALJ for review. See Moore v. Astrue, No. 11-CV-952 (TJM/CFH), 2013 WL 935855, at *4–5 (N.D.N.Y. Feb. 5, 2013).

> [I]t is not sufficient for the ALJ simply to secure raw data from the treating physician. What is valuable about the perspective of the treating physician . . . is his opportunity to develop an informed opinion as to the physical status of a patient. To obtain from a treating physician nothing more than charts and laboratory test results is to undermine the distinctive quality of the treating physician that makes his evidence so much more reliable than that of an examining physician who sees the claimant once and who performs the same tests and studies as the treating physician.

Peed v. Sullivan, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991).

Here, Schrock's contention is baseless. The ALJ had acted to develop the record. First, at the inception of the administrative hearing, Schrock's counsel confirmed that the ALJ had issued subpoenas for medical records on Schrock's behalf. Tr. at 27, 169–71. Further, the ALJ indicated she would re-issue subpoenas along with a personal letter for medical records on Schrock's behalf. Tr. at 28–30. Second, the ALJ indicated at the close of the administrative hearing that she would hold the case open

14

while she attempted to obtain medical records from certain facilities. Tr. at 49. After the hearing, the ALJ received additional records before issuing a determination. Id. at 311–416.[9] Furthermore, the administrative record contains Schrock's medical history beyond twelve months preceding March 12, 2010, when Schrock filed her disability benefits application. 20 C.F.R. § 404.1512(e). Since there is no obvious gap in the administrative record, and Schrock does not argue the contrary, and the ALJ had possessed a complete medical history, the ALJ was under no obligation to seek additional information before rejecting Schrock's petition. Rosa, 168 F.3d at 79 n.5. Nevertheless, the ALJ took affirmative steps to obtain additional medical records and in doing so, was successful. Therefore, the ALJ's actions cannot constitute a failure to develop the record.

### ii. Impartiality

"It cannot be disputed that litigants seeking Social Security benefits are entitled to have a fair and impartial decision-maker." Pronti v. Barnhart, 339 F. Supp. 2d 480, 491–92 (W.D.N.Y. 2004). To assess the impartiality of a decision-maker, courts have looked at the proceedings to determine if "the ALJ could . . . render a fair judgment, . . . [whether the] procedural safeguards were constitutionally inadequate, or . . . [whether the ALJ's behavior] shock[ed] the conscience." Efinchuk v. Astrue, 480 F.3d 846, 848–49 (8th Cir. 2007) (citing cases).

---

[9] Exhibit 14F was the most recent submission at the administrative hearing. Tr. at 27. The most recent submission in the administrative record before the ALJ decision was rendered is Exhibit 20F. Tr. at 411–16.

In this case, there is nothing in the decision to indicate that the ALJ was biased against Schrock. First, given that the impartiality claim's underlying contention is baseless as discussed above, Schrock cannot rely on the alleged failure to develop the record as a ground for the claim. The ALJ decision was seven pages long and discussed the medical records and testimony at length, providing a reasoned conclusion. Schrock failed to complain about any part of the proceedings, including receiving notice or having an opportunity to be heard. Any such claims would be belied by the record which includes multiple correspondences between the Commissioner and Schrock indicating that she had notice of each administrative decision and her appeal options. Schrock also had representation for at least some portion of the administrative process. Furthermore, while Schrock claims that the ALJ was focused on "attacking her," nothing in the decision or subsequent denials or opinions evidences such behavior or any behavior which shocks the conscience. Pl.'s Mem. of Law at 17. Lastly, even construing Schrock's contentions in the light most favorable to her, her conclusory allegations are insufficient to demonstrate a colorable constitutional claim. Therefore, Schrock's claim that the ALJ failed to act as an impartial adjudicator is without merit.

Accordingly, there is no reason to find that the ALJ failed to develop the record, was biased, or that if remand was granted, another ALJ ought to conduct the proceedings. Therefore, it is recommended that Commissioner's on these issues be affirmed.

### 3. Use of the Grids

The ALJ then conducted her Step Five analysis. The ALJ may apply the Grids or consult a vocational expert ("VE"). See Heckler v. Campbell, 461 U.S. 458, 462 (1983);

Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2 (2003). "For a claimant whose characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he is disabled." Pratts v. Chater, 94 F.3d 34, 38–39 (2d Cir. 1996). However, "where the claimant's work capacity is significantly diminished beyond that caused by his [or her] exertional impairment, the application of the grids is inappropriate," as the Grids do not take into account nonexertional impairments. Bapp v. Bowen, 802 F.2d 601, 605–06 (2d Cir. 1986) (citations omitted). In this case, Schrock contends that using the Grids was inappropriate and a vocational expert needed to be called regarding the effects of her depression and visual impairments.

The ALJ concluded that, even with visual impairments, Schrock could perform light work so long as the work does not require depth perception or the use of a computer. Tr. at 13, 16.

> Light work involves lifting no more than [twenty] pounds at a time with frequent lifting or carrying of objects weighing up to [ten] pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking . . . or when it involves sitting most of the time with some pushing and pulling of arm or leg controls . . . If someone can do light work, . . . he or she can also do sedentary work, unless there are additional limiting factors such as a loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). Additionally, with respect to Schrock's visual impairment, the ALJ determined that

> Where a person has a visual impairment which is not of listing severity, but causes the person to be a hazard to self and others—usually a constriction of visual fields rather than a loss of acuity—the manifestations of tripping over boxes

17

> while walking, inability to detect approaching persons or
> objects, difficulty in walking up and down stairs, etc., will
> indicate to the decision-maker that the remaining
> occupational base is significantly diminished for light work
> (SSR 83-14). However, this does not apply in the instant
> case. In the most recent report, a treating physician stated
> . . . [Schrock] has a normal field of vision, muscle function
> and visual efficiency in her left eye; and is capable of
> traveling by bus alone . . . . Therefore, the medical evidence
> indicates . . . [Schrock] is capable of seeing well enough to
> avoid hazards.

Tr. at 16.

The consultative examiner ("CE") agreed, and the ALJ adopted the physical RFC, that Schrock could lift and carry twenty pounds occasionally and ten pounds frequently and stand, walk, and sit more than four hours each out of an eight-hour workday. Tr. at 13, 206–07. Further, the CE opined that Schrock's ability to push, pull, and bend was moderately limited. Tr. at 206. Such findings were supported by diagnosis of lower back pain with intermittent left radiculopathy. Tr. at 206.

Additionally, the ALJ accounted for the potential adverse element of Schrock dealing with visual impairments by identifying her inability to perform work involving depth perception and computer use. "[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guideline," rather such is "a case-by-case" determination considering whether the guidelines adequately reflect a claimant's abilities or whether nonexertional impairments constitute such a significantly limiting factor that other testimony is required. Bapp, 802 F.2d at 603, 605. The limitations stated above do not constitute a significant diminishment of Schrock's capacities so that her nonexertional impairments precluded the ALJ from using the Grids. As noted, Schrock's RFC permits her to avoid

hazards. Further, Schrock testified that she is capable of seeing large objects. Tr. at 38; see SSR 85-15, 1985 WL 56857 (S.S.A. 1985) ("As a general rule, even if a person's visual impairment(s) were to eliminate all jobs that involve very good vision (such as working with small objects or reading small print), as long as he or she retains sufficient visual acuity to be able to handle and work with rather large objects (and has the visual fields to avoid ordinary hazards in a workplace), there would be a substantial number of jobs remaining across all exertional levels."). Because Schrock has not suffered a substantial loss in her ability to work with large objects and avoid hazards to self and others, light work as defined by the Grids, with certain limitations, was an appropriate conclusion. See Cosgrove v. Barnhart, No. 01-CV-2632 (LTS), 2004 WL 1171772, at *6–7 (S.D.N.Y. May 6, 2004) (affirming ALJ's decision that claimant could perform sedentary to heavy work in spite of his visual nonexertional limitations).

Lastly, the ALJ's failure to consider Schrock's claim of depression in the RFC determination does not warrant remand. Tr. at 43. The record is devoid of any evidence showing that Schrock has any history of psychiatric hospitalizations and aside from taking anti-depressant medication, Schrock did not seek treatment for the alleged condition. Tr. at 43, 159. Schrock testified that the anti-depressant medication had "helped." Tr. at 43. Moreover, the treatment records authored by Dr. Ceraolo, who prescribed Schrock the medication, do not contain any mention of Schrock's psychiatric needs. Tr. at 324–43. As noted, the ALJ is entitled to rely on what the record does not say. Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (citations omitted); see also Pease v. Astrue, No. 06–CV–0264, 2008 WL 4371779, at *12–13 (N.D.N.Y. Sep. 17, 2008) (because the claimant who has pain, depression, and drowsiness can "attend

19

to all personal and daily living needs independently and . . . prepare meals and care for his children" and his "medical records are devoid of any reference to any nonexertional limitations or restrictions," a vocational expert was not necessary (quotations omitted)). At best, the ALJ's failure here constitutes a mere harmless error.

Given the above evidence, Schrock's visual limitations and claim of depression did not sufficiently erode the range of jobs upon which the grid is predicated and the ALJ's finding is supported by substantial evidence. Accordingly, the Commissioner's decision on this issue should affirmed.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that the Commissioner's decision denying disability benefits be **AFFIRMED**.

Pursuant to 28 U.S.C. §636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. §636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Dated: February 18, 2014
       Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge